## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANNIA

STELLA PROPERTY DEVELOPMENT   )
AND EVENT PRODUCTION, LLC,      )
                                  )
            Plaintiff,      )
                                  )
     vs.            )   Civil Action No. 3:24-cv-60
                                  )   Judge D. Brooks Smith
AUTO-OWNERS INSURANCE       )
COMPANY,                     )
                                  )
            Defendants.    )

## <u>MEMORANDUM and ORDER OF COURT</u>

Pending before me is a dispute over whether Stella Property Development and Event Production, LLC's ("Stella") claim for roof damage is covered under its commercial property policy issued by Auto-Owners Insurance Company ("Auto-Owners"). Stella asserts claims for breach of contract, and for bad faith under 42 Pa. C.S.A § 8371. The parties have filed cross-motions for partial summary judgment: Stella seeks a determination that coverage is owed as a matter of law while Auto-Owners seeks dismissal of Stella's statutory bad-faith claim. Stella has also filed a Motion to Strike Auto-Owners' belated concise statement of material facts in support of its Motion. For the reasons set forth below, I will deny Stella's motions and grant Auto-Owners' motion.

1

## I.    Background

### A. Factual Background

Plaintiff Stella owns the Casimir Cultural Center located in Johnstown, Pennsylvania (the "Church").[1] In September 2018, Defendant Auto-Owners issued Stella a commercial property policy ("Policy"). ECF No. 1-1, (¶ 9); ECF No. 19, (¶ 9). The Policy provides, in relevant part, that Auto-Owners "will pay for direct physical loss of or damage to" the Church "caused by or resulting from any Covered Cause of Loss." Appx68.[2] "Covered Cause of Loss" is defined by reference to a separate "Causes of Loss Form." *Id.*; Appx91–99. That Form, in turn, defines "Covered Causes of Loss" as "Risks of Direct Physical Loss," unless the loss is otherwise excluded or limited by the Policy. Appx91.

The Causes of Loss Form contains multiple exclusions. Two are relevant here. First Paragraph (B)(2)(d) ("wear-and-tear exclusion") excludes loss or damage "caused by or resulting from" certain conditions, including:

(1) Wear and tear;
(2) Rust or other corrosion, decay, deterioration, hidden or latent defect or any quality in property that causes it to damage or destroy itself;
(3) Smog;
(4) Settling, cracking, shrinking or expansion;

---

[1] The building was originally constructed in 1902 as a Catholic church, Appx 169:16–22, and operated as such for over 100 years, Appx164:4–7.
[2] All cites to "Appx" throughout this opinion refer to the Appendix of Exhibits to Plaintiff's Concise Statement of Undisputed Material Facts Supporting Motion for Partial Summary Judgment (ECF No. 48).

Appx92–93. Second, Paragraph (B)(3) ("maintenance exclusion") excludes loss or damage "caused by or resulting from . . . faulty, inadequate or defective:"

> (1) Planning, zoning, development, surveying, siting;
> (2) Design, specifications, workmanship, repair, construction, renovation, remodeling. grading, compaction;
> (3) Materials used in repair, construction, renovation or remodeling; or
> (4) Maintenance of part or all of any property on or off the described premises.

Appx94. Both exclusions, however, contain exceptions, commonly referred to as "resulting loss" or "ensuing loss" clauses.[3] The wear-and-tear exclusion states that if an excluded cause of loss "results in a 'specified cause of loss' . . . [Auto-owners] will pay for the loss or damage caused by that 'specified cause of loss.'" Appx93 (§ (B)(2)(d)). The Policy defines "Specified causes of loss" as:

> fire; lightning; explosion; **windstorm** or hail; smoke; aircraft or vehicles; riot or civil commotion; vandalism; leakage from fire-extinguishing equipment; sinkhole collapse; volcanic action; falling objects; weight of snow, ice or sleet; water damage.

---

[3] Although the exception at issue in the present case uses the wording "results in" as opposed to "ensue," courts have frequently stated that resulting loss clauses and ensuing loss clauses are one and the same. *See, e.g., Burgunder v. United Specialty Ins. Co.,* No. CV 17-1295, 2018 WL 2184479, at *5 (W.D. Pa. May 11, 2018) (describing identical language as the present clause as "an ensuing loss provision"); *Balfour Beatty Constr., L.L.C. v. Liberty Mut. Fire Ins. Co.,* 968 F.3d 504, 513 (5th Cir. 2020) ("We cannot find . . . any significant difference . . . between resulting loss provisions and ensuing loss provisions."); *Viking Constr., Inc. v. 777 Residential, LLC,* 210 A.3d 654, 664–65 & n.9 (Conn. App. Ct. 2019) ("A resulting loss clause [is] also known as an ensuing loss clause."); *Erie Ins. Property & Casualty Co. v. Chaber*, 801 S.E.2d 207 n.8 (W. Va 2017) ("Whether an insurance policy uses the term ensuing loss or resulting loss is of no moment . . . The distinction is simply a matter of different wording among insurance policies. There is no legal significance to using one phrase over the other." (internal quotation marks omitted)).

Appx98 (emphasis added). Likewise, the maintenance exclusion provides that "if an excluded cause of loss [listed in that subsection] results in a Covered Cause of Loss we will pay for the loss or damage caused by that Covered Cause of Loss." Appx94 ((B)(3)). Thus, if an ensuing loss provision applies, it restores coverage for the loss caused by the ensuing covered cause.

On June 21, 2021 a windstorm occurred near the Church, with "[e]stimated maximum wind gusts of 65 mph, for a cumulative duration of 1 hour." Appx314. Thereafter, Stella retained James Kibler III ("Kibler") of Rain Remodeling & Restoration Inc. ("Rain") to inspect the roof for damage. Appx252. Kibler inspected the Church and issued a report dated July 12, 2021 (the "Rain Report") which stated that "[e]xtensive wind damage is present on nearly all facets of the roof." Appx251. The Rain Report also noted that the existing organic shingles were in "very poor condition" and were "defective, discontinued, and no longer available." *Id*. At this time, Kibler estimated the cost to repair the roof at $108,010.52.[4] Appx253–56.

Stella submitted a claim to Auto-Owners for first-party property coverage and provided the Rain Report.[5] Auto-Owners' assigned claims representative Susan Dick

---

[4] In May 2024, Kibler re-inspected the roof and estimated the cost of repairs at $366,371.95. Appx359.
[5] *See* Plaintiff's Concise Statement of Undisputed Material Facts Supporting Motion for Partial Summary Judgment (ECF No. 47) ("Pltf. Stmt."), at ¶ 35 Defendant Auto-Owners Insurance Company's Response to Plaintiff's Statement of Facts (ECF No. 53) ("Def. Stmt."), at ¶ 35.

("Dick") to handle the claim, and she in turn retained Hancock Claims Consultants, Inc. ("Hancock"), to inspect the roof. *See* Pltf. Stmt. at ¶¶ 36–37; Def. Stmt. at ¶¶ 36–37. Hancock employee Brandon Turner ("Turner") inspected the property on August 5, 2021 and issued a report (the "Turner Report"). ECF No. 49-4. Turner did not go onto the roof itself but observed that "the shingles appear to be over 25 years old and in very poor condition." *Id*. He concluded that "[n]o sudden loss created damages" to the roof. *Id*.

Dick thereafter retained engineer, Ryan Fitzgerald ("Fitzgerald") of Rimkus Consulting Group, Inc. ("Rimkus") to inspect the roof. Pltf. Stmt. at ¶ 41; Def. Stmt. at ¶ 41. Fitzgerald performed a ground and aerial-drone inspection on August 25, 2021, reviewed historical aerial images and weather data, and issued a report dated September 3, 2021 (the "Rimkus Report"). Appx306–53. The Rimkus Report concluded that the asphalt shingles "were not damaged by a single wind event" and the conditions on the roof—"flaking granules and clawing and splitting overlay tabs"—were "typical forms of long-term deterioration of organic shingles." Appx311. It further stated that, "in their deteriorated states, individual shingles and overlay tabs had been removed by various moderate wind events," and that the wind speeds recorded at the Church were "generally considered to be non-damaging for structures and cladding which are properly designed, constructed, and maintained." Appx311, 315.

Two months later, Auto-Owners denied Stella's claim, citing the policy exclusions quoted above. Appx159–60. The denial letter echoed Rimkus's conclusions and stated:

> Our findings indicate that the deteriorated condition of your shingles due to decay and wear and tear are what caused the shingles to dislodge. In their deteriorated state, the shingles are no longer properly bonded, sealed and secured to the roof surface and cannot resist any wind uplift. Due to the exclusions discussed above, we regret that we will be unable to assist you or make payment for the damages.

*Id.*

## B. Procedural History

On December 6, 2023 Stella filed a Complaint (ECF No. 1–1) against Auto-Owners in the Court of Common Pleas, Allegheny County, Pennsylvania. The Complaint asserted claims for breach of contract (Count I) and Bad Faith pursuant to 42 Pa. Cons. Stat. § 8371 (Count II) arising from Auto-Owners' denial of coverage. Auto-Owners filed a Notice of Removal (ECF No. 1) on December 16, 2023 and, after an unsuccessful attempt at dismissal (ECF No. 12, 18), answered the Complaint (ECF No. 19).[6] The parties thereafter filed cross-motions for partial

---

[6] This case was originally assigned to Judge Nora Barry Fischer of the U.S. District Court for the Western District of Pennsylvania, Pittsburgh Division. On March 19, 2025, Judge Fischer issued an Order to Show Cause upon Stella to demonstrate why the matter should not be transferred to the U.S. District Court for the Western District of Pennsylvania, Johnstown Division, pursuant to 28 U.S.C. § 1404(a) (ECF No. 24). In response, Stella did not oppose transfer (ECF No. 25) and Judge Fischer transferred the case to the Johnstown Division (ECF No. 26), with Judge Stephanie L. Haines presiding. After the parties filed the cross-motions for Summary Judgment

summary judgment: On October 2, 2025, Stella moved for partial summary judgment on the breach of contract claim (ECF No. 45) and Auto-Owners moved for partial summary judgment seeking dismissal of the bad-faith claim (ECF No. 49). Stella opposed Auto-Owners' motion on November 3, 2025 (ECF No. 54) and raised a Local Rule 56(B)(1) issue regarding Auto-Owners' failure to file a separate concise statement of facts in support of its motion. Auto-Owners responded by filing a separate concise statement (ECF No. 55), which Stella moved to strike (ECF No. 56). Auto-Owners opposes the motion to strike (ECF No. 57). The cross-motions and motion to strike are ripe for disposition.[7]

## II.    Standard of Review

Summary judgment is appropriate where, after reviewing "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavit, if any, . . . there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law." *Anderson v. Consol. Rail Corp.,* 297 F.3d 242, 247 (3d Cir. 2002) (quoting Fed. R. Civ. P. 56(c)). "In determining whether a genuine issue of fact exists, we resolve all factual doubts and

---

presently before the Court, Judge Haines referred this case to Circuit Judge D. Brooks Smith, sitting by designation.

[7] This Court has removal jurisdiction under 28 U.S.C. § 1441(a) based on diversity of the parties.

draw all reasonable inferences in favor of the nonmoving party." *Conoshenti v. Pub. Serv. Elec. & Gas Co.,* 364 F.3d 135, 140 (3d Cir. 2004). A dispute is "genuine" if the evidence, when viewed in the light most favorable to the nonmoving party, would allow a reasonable jury to return a verdict for that party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The party moving for summary judgement has the initial burden of demonstrating the absence of a genuine dispute of material fact, leaving only legal questions to be resolved. *Duquesne Light Holdings, Inc. & Subsidiaries v. Comm'r of Internal Revenue*, 861 F.3d 396, 403 (3d Cir. 2017). Once that burden is met, the non-moving party must point to "sufficient cognizable evidence to create material issues of fact concerning every element as to which the non-moving party will bear the burden of proof at trial." *Simpson v. Kay Jewelers, Div. of Sterling, Inc.*, 142 F.3d 639, 643 n.3 (3d Cir. 1998) (quoting *Fuentes v. Perskie*, 32 F.3d 759, 762 n.1 (3d Cir. 1994)). In cases where the parties have filed cross-motions for summary judgement, the standard remains unchanged. *Binotto v. Geico Advantage Ins. Co.*, 750 F. Supp. 3d 492, 496–97 (W.D. Pa. 2024). "[T]he court must rule on each party's motion on an individual and separate basis, determining, for each side, whether a judgment may be entered in accordance with the summary judgment standard." *Id.*

8

### III.    Analysis

#### A. Plaintiff's Motion - Breach of Contract

Generally, "[t]he interpretation of an insurance contract regarding the existence or non-existence of coverage" poses a question of law to be resolved by the court. *Minnesota Fire & Cas. Co. v. Greenfield,* 855 A.2d 854, 861 (Pa. 2004).[8] In resolving that question, "[t]he polestar of our inquiry" is, of course, "the language of the insurance policy." *Madison Const. Co. v. Harleysville Mut. Ins. Co.,* 735 A.2d 100, 106 (Pa. 1999).

The Policy at issue is what is known as an "all risks" policy. Unlike policies that cover only specified risks, such as fire or flooding, an "all risks" policy provides coverage for "all fortuitous losses not resulting from misconduct or fraud unless the policy contains a specific provision expressly excluding the loss from coverage." *Intermetal Mexicana, S.A. v. Insurance Co. of North America,* 866 F.2d 71 (3d Cir. 1989) (applying Pennsylvania law) (citation omitted). In practical terms, absent an applicable exclusion, the loss is covered; if an exclusion applies, there is no coverage. *1 S.A.N.T., Inc. v. Berkshire Hathaway, Inc.,* 513 F. Supp. 3d 623, 626 (W.D. Pa. 2021), *aff'd sub nom. Wilson v. USI Ins. Serv. LLC,* 57 F.4th 131 (3d Cir.

---

[8] Because the Court is exercising diversity jurisdiction, "it must apply the substantive law as decided by the highest court of the state whose law governs the action"—here, Pennsylvania. *Orson, Inc. v. Miramax Film Corp.,* 79 F.3d 1358, 1373, n. 15 (3d Cir. 1996). The parties agree that Pennsylvania law applies to their dispute.

2023). Pennsylvania applies a burden-shifting framework in determining whether coverage exists under an all-risks policy. The insured bears the initial burden "to show that a loss has occurred." *Wexler Knitting Mills v. Atl. Mut. Ins. Co.,* 555 A.2d 903, 905 (Pa. Super. Ct. 1989); *see also Miller v. Bos. Ins. Co.,* 218 A.2d 275, 277 (Pa. 1966) ("it is a necessary prerequisite to recovery upon a policy for the insured to show a claim within the coverage provided by the policy."). If the insurer denies coverage based on an exclusion, it "has asserted an affirmative defense and, accordingly, bears the burden of proving such defense." *Madison Const. Co. v. Harleysville Mut. Ins. Co.,* 735 A.2d 100, 106 (Pa. 1999). Finally, where the insured invokes an exception to the exclusion "the burden to prove whether the exception applies falls again on the insured." *Consol. Rail Corp. v. ACE Prop. & Cas. Ins. Co.,* 182 A.3d 1011, 1027 (Pa. Super. Ct. 2018).

Those burdens are applied through well-settled principles of Pennsylvania contract interpretation:

> The goal of [interpreting an insurance contract] is, of course, to ascertain the intent of the parties as manifested by the language of the written instrument. Where a provision of a policy is ambiguous, the policy provision is to be construed in favor of the insured and against the insurer, the drafter of the agreement. Where, however, the language of the contract is clear and unambiguous, a court is required to give effect to that language.

*Madison Const. Co.,* 735 A.2d at 106 (quoting *Gene & Harvey Builders v. Pennsylvania Mfrs. Ass'n,* 517 A.2d 910, 913 (Pa. 1986)). Contractual language will

be found to be ambiguous only "if it is reasonably susceptible of different constructions and capable of being understood in more than one sense . . . when applied to a particular set of facts." *Id.* (citations omitted). Indeed, where possible, "Courts should read policy provisions to avoid ambiguities," not "torture language to create them," *Mitsock v. Erie Ins. Exch.,* 909 A.2d 828, 831 (Pa. Super. Ct. 2006) (citation omitted), and "a contract is not rendered ambiguous by the mere fact that the parties do not agree upon the proper construction." *Metzger v. Clifford Realty Corp.,* 476 A.2d 1, 5 (Pa. Super. Ct. 1984) (citation omitted); *see also Madison Const. Co.,* 735 A.2d at 106 ("We will not [] distort the meaning of [policy] language or resort to a strained contrivance in order to find an ambiguity.").

With those principles in mind, I turn to the dispute before me. Auto-Owners does not dispute that Stella has suffered a loss cognizable under the Policy—namely, roof damage.[9] Yet these questions remain: (1) whether an exclusion applies; and (2) if so, whether an ensuing loss provision restores coverage. I address each in turn.

---

[9] *See* Plaintiff's Memorandum in Support of Motion for Partial Summary Judgment (ECF No. 46) ("Pltf. Mot."), at 17 (stating that "[t]he Church's physical roof damage is obviously . . . covered barring the application of an exclusion") and Defendant Auto-Owners Insurance Company's Memorandum of Law in Opposition to Plaintiff's Motion for Partial Summary Judgment (ECF No. 54) ("Def. Resp.") (not disputing that claim).

### 1. Exclusions.

In denying coverage, Auto-Owners relies on both the wear-and-tear and inadequate maintenance exclusions. Appx159–60.[10] It maintains that summary judgement is inappropriate because there is a genuine dispute of material fact as to the condition of the roof before June 21, 2021—the date Stella alleges a windstorm damaged portions of the roof—including whether the roof had been inadequately maintained and whether it was already worn and torn. Def. Resp. at 12.

Stella does not meaningfully contest that the roof's pre-storm condition is disputed. Instead, the "entire premise" of its motion is that, even if the condition of the roof manifested wear and tear, the exclusions do not bar coverage as a matter of law under Pennsylvania's "efficient proximate cause" rule.[11] As Stella explains it, that rule provides that "a loss is covered under the insurance policy when the loss is caused by a covered peril, even though other excluded perils contributed to the loss." Pltf. Mot. at 18 (quoting *Tatalovich v. Pennsylvania Nat. Mut. Cas. Ins. Co.*, No. 10724 OF 2001, 2003 WL 22844173, at *1 (Pa. Com. Pl. Oct. 10, 2003)).

_____

[10] Although Auto-owners official denial letter cited the above quoted provisions in their entirety, its briefing focuses solely on its contention that "the roof was poorly maintained" and that "the roof was worn and torn." Def. Resp. at 12. Accordingly, we do likewise.

[11] Plaintiff's Reply in Support of Its Motion for Partial Summary Judgment (ECF No. 59) at 1.

At the outset, I note that Pennsylvania courts have not sharply defined the precise contours of the efficient proximate cause (EPC) doctrine, particularly as applied to the factual scenario presented here. Accordingly, I must predict how the Pennsylvania Supreme Court would apply the doctrine, guided by Pennsylvania Supreme Court precedent and, where appropriate, "decisions of state intermediate appellate courts, of federal courts interpreting that state's law, and of other state supreme courts that have addressed the issue." *Buczek v. Cont'l Cas. Ins. Co.,* 378 F.3d 284, 289 n.2 (3d Cir. 2004).

Although Stella invokes the EPC by name, its briefing at times resembles what other jurisdictions describe as the "concurrent causation" doctrine (CCD)—contending that coverage is triggered if a covered peril (here, wind) played *any* causal role in the loss, regardless of the role of an excluded peril. Thus, Stella argues, the exclusions do not apply and its claim is covered as a matter of law given Auto-Owners' concession that "wind uplift" played some part in the damage of the roof. *See* Pltf. Mot. at 17–19. As a conceptual matter, the EPC and CCD are distinct doctrines.[12] The EPC is often framed in terms of a causal sequence. It asks which

---

[12] *See, e.g.,* § 52:7. Summary of coverage issues—Property causation doctrines—Concurrent causation, 4 Law and Prac. of Ins. Coverage Litig. § 52:7 ("Often used interchangeably with 'efficient proximate causation,' concurrent causation is actually a different doctrine."); *Leonard v. Nationwide Mut. Ins. Co.,* 499 F.3d 419, 432 n.5 (5th Cir. 2007) ("Efficient proximate causation is distinct from two other etiological doctrines occasionally employed in the insurance context: independent and concurrent causation."); *see generally BME Fire Trucks LLC v. Cincinnati Cas.*

peril was the "triggering" cause and mandates coverage where a covered cause "sets into motion the chain of events" culminating in damage, even if excluded causes contributed along the way. *Findlay v. United Pac. Ins. Co.,* 917 P.2d 116, 118, 120 (1996) (citation omitted).[13]

By contrast, the concurrent-causation doctrine—originating with the California Supreme Court's decision in *State Farm Mut. Auto. Ins. Co. v. Partridge,* 514 P.2d 123 (Cal. 1973)—is applied where covered and excluded perils operate as independent, concurrent causes of the same loss. It permits coverage so long as the covered peril is a "concurrent proximate cause of the injuries," even if it is not the "'prime,' 'moving,' or 'efficient' cause." *Id.* at 130.[14] Notwithstanding those labels, courts often collapse the analysis into a single inquiry focused on identifying the proximate or predominant cause of the loss. *See, e.g., ABK, LLC v. Mid-Century Ins.*

---

*Co.,* No. 1:23-CV-00321-AKB, 2025 WL 3443532, at *11–13 (D. Idaho Dec. 1, 2025) (exploring nuances in application between both doctrines).

[13] *See also Russell v. NGM Ins. Co.,* 176 A.3d 196, 207 (N.H. 2017) ("The efficient proximate cause is the risk that sets others in motion." (citation omitted)); *Sebo v. Am. Home Assurance Co.,* 208 So. 3d 694, 697 (Fla. 2016) ("The EPC provides that where there is a concurrence of different perils, the efficient cause—the one that set the other in motion—is the cause to which the loss is attributable.").

[14] S*ee also Sebo,* 208 So. 3d at 698 ("The CCD provides that coverage may exist where an insured risk constitutes a concurrent cause of the loss even when it is not the prime or efficient cause."); *Cawthon v. State Farm Fire & Cas. Co.,* 965 F. Supp. 1262, 1269 (W.D. Mo. 1997) ("[T]he doctrine of concurrent causation . . . provides that if one event is covered by insurance and another is excluded, there will be insurance coverage unless the excluded event is the sole proximate cause of the injury.").

*Co.,* 454 P.3d 1175, 1185 (Idaho 2019) (observing that some courts "have defined efficient proximate cause to mean the predominant cause, rather than the cause which is first in time" (citation omitted)); *Pioneer Chlor Alkali Co. v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pennsylvania,* 863 F. Supp. 1226, 1231 (D. Nev. 1994) (noting confusion and applying a "predominating cause" standard); *State Farm Fire & Cas. Co. v. Von Der Lieth,* 820 P.2d 285, 290 (Cal. 1991) (defining "efficient proximate cause" as the "predominating cause," not necessarily the "moving" or "triggering" cause).

I predict that the Pennsylvania Supreme Court would apply the efficient proximate cause doctrine in that predominant-cause sense. Indeed, the seminal Pennsylvania case on the doctrine, *Trexler Lumber Co. v. Allemannia Fire Ins. Co. of Pittsburgh,* 136 A. 856 (Pa. 1927),[15] points in that direction.[16] There, a policy

---

[15] *Trexler* is often cited as first adopting the efficient proximate cause doctrine in Pennsylvania. *See, e.g., Scranton Club v. Tuscarora Wayne Mut. Grp., Inc.,* 305 A.3d 982 (Pa. Super. Ct. 2023) (citing *Trexler* as defining "the efficient proximate cause analysis that applies under Pennsylvania law") *vacated on other grounds,* 331 A.3d 521 (Pa. 2024); *Tatalovich,* 2003 WL 22844173, at *1 (citing *Trexler* for the proposition that "Pennsylvania courts have recognized the efficient proximate cause rule"); *Domus BWW Funding, LLC v. Arch Ins. Co.,* No. 2:23-CV-00094-JDW, 2024 WL 4136424, at *6 (E.D. Pa. Sept. 10, 2024), *amended,* No. 2:23-CV-00094-JDW, 2024 WL 4643086 (E.D. Pa. Oct. 31, 2024) (noting that the "efficient proximate cause" doctrine in Pennsylvania "stems" from *Trexler*).

[16] *See also Younis Bros. & Co. v. CIGNA Worldwide Ins. Co.,* 899 F. Supp. 1385, 1394 (E.D. Pa. 1995) (applying Pennsylvania law and equating "efficient cause" with "the predominant and determining cause of the loss") *aff'd sub nom. Younis Bros. & Co. v. CIGNA Worldwide Ins. Co.,* 91 F.3d 13 (3d Cir. 1996); *New Mkt. Inv. Corp. v. Fireman's Fund Ins. Co.,* 774 F. Supp. 909, 915 (E.D. Pa. 1991) (applying

covered windstorm damage but excluded loss caused by snow. *Id.* at 857. After the insured's lumber sheds collapsed, the "pivotal question" was whether the loss resulted from a windstorm or from an earlier snowfall and resulting snow pressure on the roofs. *Id.* The Supreme Court affirmed a verdict for the insured and approved of a jury charge requiring the insured to prove that the windstorm was the "dominant and efficient cause" of the collapse, while rejecting the insurer's position that any degree of snow contribution would bar recovery. *Id.* at 858. The Court explained that even if snow pressure contributed to the collapse, "that would not defeat plaintiff's right of action. Where a windstorm, covered by the policy, was the efficient cause of the loss, the fact that other outside causes contributed thereto will not relieve the insurer." *Id.*

Although *Trexler* quotes a general proposition that the "dominant" cause may be the one that "sets the other causes in operation," *id.* (quoting *Hartford Steam Boiler Inspection & Ins. Co. v. Pabst Brewing Co.,* 201 F. 617, 626 (7th Cir. 1912), the facts of that seminal case do not fit a true "chain-of-causation" scenario. Critically, the windstorm (covered cause) occurred "[l]ater in the afternoon" *after* the snowfall (excluded cause). *Id.* at 858. Sequentially, then, it cannot be said to have

---

Pennsylvania law and explaining that "proximate and real efficient cause is the predominant and determining cause of the loss").

16

set things in motion. Rather, the loss stemmed from two distinct perils that ultimately combined to produce the damage—the very type of causation presented here.[17]

In applying *Trexler*'s approach, I conclude that Stella's claim is not defeated merely because wear and tear and/or inadequate maintenance may have contributed to the roof damage. But Stella must still prove that the windstorm was the "dominant and efficient" cause of the roof's destruction, as opposed to merely a "remote" or "incidental" cause. *Trexler,* 136 A. at 858. And where, as here, the record contains competing evidence proffered to show "from which of concurrent causes the loss resulted," that determination belongs to the factfinder, not to the court as a matter of law. *Id.* (explaining that such cases "can be properly determined only by triers of fact"); *see also Von Der Lieth,* 820 P.2d at 291 ("When a loss is caused by a combination of a covered and specifically excluded risks . . . the question of what caused the loss is generally a question of fact[.]"); *Pioneer Chlor Alkali Co.,* 863 F.

---

[17] Moreover, the two cases *Trexler* cites for its main holding confirm this approach. *See id.* (citing *Jordan v. Iowa Mut. Tornado Ins. Co. of Des Moines,* 130 N.W. 177 (Iowa 1911) and *Richelieu & O. Nav. Co. v. Bos. Marine Ins. Co.,* 26 F. 596 (C.C.E.D. Mich. 1886), *aff'd,* 136 U.S. 408 (1890)). Both cases involved two independent causes, as opposed to one cause "triggering" another. *See Jordan*, 130 N.W. at 181 (cold temperature and windstorm); *Richelieu*, 26 F. at 597 (crew negligence and "perils of the sea"). As the Court in *Richelieu* made clear: "when *there is no order of succession in time*, when there are two concurrent causes of loss, the predominating efficient one must be regarded as the proximate when the damage done by each cannot be distinguished." 26 F. at 604 (emphasis added) (citation omitted).

Supp. at 1231 ("[T]he determination of what was the efficient proximate cause is a question for the trier of fact.").

### 2. Ensuing Loss

Stella next argues that, even if the EPC does not mandate coverage as a matter of law, coverage exists for the "separate and independent reason" that the exclusions invoked by Auto-Owners "contain[] express language indicating that in the event of concurrent covered and uncovered causes, coverage exists." Pltf. Mot. at 19.[18] As noted, Auto-Owners relies on two exclusions as a basis for denying coverage: the wear-and-tear exclusion in Paragraph (B)(2)(d) and the maintenance exclusion in Paragraph (B)(3)(c)(4). Each exclusion includes an ensuing loss provision. Because the provisions are worded differently, I address them separately.

### a. Wear-and-tear

The wear-and-tear exclusion provides that, if wear and tear "results in a 'specified cause of loss' . . . [Auto-Owners] will pay for the loss or damage caused by that 'specified cause of loss'" Appx93 (§ (B)(2)(d)). The Policy defines "specified cause of loss" to include, among other perils, "windstorm." Appx94. Stella reads this

---

[18] Stella suggests that it is Auto-Owners' burden to prove that the ensuing loss clause does not apply. *See Id.* at 20, 22. Stella is wrong. Under Pennsylvania law, once the insurer establishes an exclusion, the burden shifts back to the insured to prove that an exception to the exclusion reinstates coverage. *Consol. Rail Corp.,* 182 A.3d at 1027.

language as "plainly designed" to address independent mixed-causation scenarios—

*i.e.,* if an excluded condition and a covered peril combine to produce a single loss,

the loss is covered. Pltf. Mot. at 20. Auto-Owners responds that Stella is

"misinterpreting" the clause. Def. Resp. at 10. In its view, the clause applies only

where an excluded condition causes the covered peril itself, which then causes

distinct damage. On that reading, Auto-Owners argues, for Stella's claim to be

covered, the wear and tear must have "result[ed] in" the windstorm—which is

plainly nonsensical. *Id.* at 11.

I agree with Auto-Owners' interpretation. The Policy defines "specified cause

of loss" as a list of *perils*—"fire; lightning; explosion; windstorm or hail; . . ."[19]—

not as "damage caused by" a peril. Read straightforwardly, then, the ensuing loss

clause applies when an excluded condition results in the peril itself, and the Policy

then pays for "the loss or damage caused by that" ensuing peril. Appx93.

Substituting the relevant defined terms into the ensuing loss clause makes the point:

"[I]f [wear and tear] . . . results in a [windstorm] . . . we will pay for the loss or

damage caused by that [windstorm.]" Appx93. That language unambiguously does

not cover the scenario here—assumed by Stella for purposes of their motion—in

---

[19] Although "water damage" is also included in the definition of "specified causes of loss," it is separately defined—like the other listed items—as a peril, not simply as damage in the abstract. *See* Appx99 ((G)(2)(c)) ("Water damage means accidental discharge or leakage of water or steam as the direct result of the breaking apart or cracking of a plumbing, heating, air conditioning or other system or appliance . . .").

which wear and tear merely made the roof more susceptible to wind damage but did not "result in" the windstorm itself. Because the language is clear as applied to these facts I must give it effect. *Madison Const. Co.,* 735 A.2d at 106.

In support of a contrary reading, Stella relies principally on an out-of-state decision, *Monterra Apartments Ltd. Liab. P'ship v. Sequoia Ins. Co.,* No. CV11-1236, 2012 WL 827075 (D. Ariz. Mar. 12, 2012), which construed materially similar language and concluded that when "wear and tear [an excluded peril] contributes to damage by a hailstorm [a covered peril], the policy provides coverage for the hail damage." Pltf. Mot. at 21–22 (quoting *Monterra,* 2012 WL 827075 at *9). *Monterra* is unpersuasive and, more importantly, does not shed light on what the Pennsylvania Supreme Court would do. There, the policy language stated—just as it does here— that if an excluded cause of loss (including wear and tear) "results in a 'specified cause of loss' [defined to include, *inter alia,* "hail,"] . . . [the insurer] will pay for the loss or damage caused by that 'specified cause of loss.'" But in applying that text, the *Monterra* court reformulated the definition by substituting "loss from hail" for "hail":

> replacing "excluded cause of loss" with "wear and tear," and "specified cause of loss" with "loss from hail," the clause reads: "if [wear and tear] results in [loss from hail], we will pay for the loss or damage caused by that [hail]."

*Id.* at *8-9. That substitution is simply not faithful to the policy language. The policy defined "specified cause of loss" as the peril itself ("hail"), not the resulting damage

("loss from hail'). Likewise, the Policy here defines "specified cause of loss" as "windstorm," not "loss from windstorm." Appx98.

Stella also points to Dick's deposition testimony, arguing that she "unequivocally . . . interprets the policy language in the identical manner as Stella." Pltf. Mot. at 20; *see also* Pltf. Stmt. at ¶ 64 & n.87 (stating that Dick testified that she interprets the policy language to mean that "if covered and uncovered causes concurrently combine to produce a loss, then the policy covers the loss"). The cited exchange is:

> Q.    So, if you go to exclusion 2D, there's language that says however, if an excluded cause of loss that is listed in 2D 1 through 7 results in a, quote, specified cause of loss, end quote, we will pay the loss or damage caused by that, quote, specified cause of loss, end quote. Do you see that?
> A.    Yes.
> Q.    That says the opposite of the language we just read from section 1; right?
> [DEFENDANT'S COUNSEL]: Objection. You can answer.
> A.    Specified cause of loss is in quotes, so I believe you have to look up what specified cause of loss is to see what that means.
> BY [PLAINTIFF'S COUNSEL]:
> Q.    I agree with you, and what I'm saying is if you conclude that there's an excluded cause and a specified cause that combine to cause a loss, that language says it's covered; correct?
> A.    Yeah. It would cover for that specified cause of loss.

Appx274:2–21.

That testimony cannot bear the weight Stella places upon it. Dick's simple agreement that the provision "would cover for that specified cause of loss" when an excluded cause and a specified cause "combine to cause a loss" does not endorse an

interpretation that would cover situations where an excluded cause merely made the property more susceptible to damage. To be sure, it might be read that way. But it could just as easily be that Dick understood the question to be referring to the typical "chain of causation" scenario. At all events, Dick retired from Auto-Owners before her deposition, and her view is not binding on Auto-Owners. *See* Def. Stmt, at ¶ 59. More fundamentally, where a policy provision is unambiguous, its meaning is a question of law for the Court, and extrinsic views about what the language means cannot create an ambiguity. *See Metzger*, 476 A.2d at 5 ("Where the words of the contract are clear and unambiguous, the intent of the parties must be determined exclusively from the agreement itself.").

Finally, Stella argues that Auto-Owners' reading renders the ensuing loss clause "incapable of application," thereby "expos[ing]" its ambiguity, because wear and tear can never "result in" several of the listed "specified causes of loss" (*i.e.*, "lightning," "hail," "aircraft," "vehicle," "riot," "civil commotion," or "vandalism"). Pltf. Mot. at 8. I am not persuaded. The clause plainly has work to do in real-world scenarios. Indeed, Auto-Owners specifically identifies one such scenario: if a defective HVAC unit exploded and resulted in smoke damage. Def. Resp. at 11. True, some of the listed "specified cause[s] of loss" will never be implicated in this context. But the phrase "specified causes of loss" is used throughout the Policy in a variety of contexts in which those causes are applicable. *See, e.g.,* Appx93–94

((B)(2)(i)) (providing coverage for the release or escape of pollutants if it is "caused by any of the 'specified causes of loss.'"); Appx96 ((C)(2)(a–c)) (providing that Auto-Owners will not cover damage to "[a]nimals," "[f]ragile articles," or "[b]uilders' machinery, tools and equipment" unless "caused by the 'specified causes of loss'"). Just because the entire definition is not uniformly implicated in this one context does not render the relevant language ambiguous. *Cf., Kurach v. Truck Ins. Exch.,* 235 A.3d 1106, 1116 (Pa. 2020) ("In interpreting the relevant provisions of [an] insurance polic[y] . . . the language of the policy must be considered in its entirety."). As I have stated above, it has other "work to do." Accordingly, Paragraph (B)(2)(d)'s ensuing-loss provision does not reinstate coverage on the theory that wear and tear merely rendered the roof more susceptible to wind damage.

### b. Inadequate Maintenance

Nor does the text of the maintenance exclusion, and its attendant ensuing-loss clause, come to Stella's aid. Paragraph (B)(3) provides that if inadequate maintenance "results in a Covered Cause of Loss, [Auto-Owners] will pay for the loss or damage caused by that Covered Cause of Loss." Appx94 ((B)(3)). The Policy defines "Covered Cause of Loss" as "Risks of Direct Physical Loss," unless the loss is otherwise excluded or limited. Appx91.

Read in context, the term "risk," in the phrase "Risks of Direct Physical Loss" refers to the peril or hazard that may cause a loss, not to the loss itself. *See Miller v.*

23

*Bos. Ins. Co.*, 218 A.2d 275, 277 (Pa. 1966) (quoting Black's Law Dictionary for the proposition that "Risk" means, *inter alia*, "the danger or hazard of a loss" and "a specified contingency or peril"); 26 No. 15 Ins. Litig. Rep. 539 (Sep. 10, 2004) ("In the context of a property policy [] the term 'risk' means 'peril' or 'hazard[.]'"). What the policy insures then, is the "direct physical loss of or damage to" the property caused by a covered risk. Appx68. That distinction is important here. Stella's susceptibility theory would require treating "risk" as synonymous with "damage from a peril," such that inadequate maintenance "resulted in" a covered cause of loss simply because it left the roof more vulnerable to wind damage. I do not read the Policy that way.[20] Accordingly, for the Paragraph (B)(3) ensuing loss clause to apply, the excluded condition must "result in" an otherwise covered peril that then causes separate loss or damage. In this case, inadequate maintenance may bear on how the roof performed under windy conditions, but it certainly did not "result in" a windstorm.

As a matter of law, then, the ensuing-loss clauses in Paragraphs (B)(2)(d) and (B)(3) do not reinstate coverage for Stella's claim, should the factfinder ultimately

---

[20] At least one court interpreting materially identical language has rejected the same construction that Stella proposes. *See Culpepper v. U.S. Fire Ins. Co.*, No. 3:12-CV-01381-L, 2013 WL 1294086, at *9 (N.D. Tex. Mar. 31, 2013) (rejecting Plaintiff's contention that "[w]hile the Policy excludes wear and tear, it clearly provides coverage where damage results from the effect of a covered event on a roof weakened by either inadequate maintenance or defective installation" as "based on flawed logic" (alteration in original))

determine that wear and tear and/or inadequate maintenance were the dominant and efficient cause of the roof damage.[21] Accordingly, we will deny Stella's motion for summary judgment.

### B. Defendants Motion for Partial Summary Judgement

I next turn to Auto-Owners' Motion for Partial Summary Judgement on Stella's statutory bad-faith claim. Before reaching the merits, however, I must resolve a procedural issue. Stella argues that the Motion should be denied because Auto-Owners did not timely file a separate concise statement of material facts as required by Local Rule 56(B)(1). *See* LCvR 56(B)(1). Relatedly, Stella has also moved to strike Auto-Owners' subsequently filed statement as untimely. I address that issue first, before turning to the substance of Auto-Owners' motion.

### 1. Local Rule 56.1 and Plaintiff's Motion to Strike

---

[21] Moreover, in Pennsylvania, "[f]orseeability is the lynchpin" for applying an ensuing loss provision. *Ridgewood Grp., LLC v. Millers Cap. Ins. Co.,* No. 1138 EDA 2016, 2017 WL 781620, at *5 (Pa. Super. Ct. Feb. 28, 2017). Under that framework, "if [a] loss was foreseeable due to [an excluded cause], then the loss is excluded from coverage; if, however, the loss was not foreseeable, then there is coverage." *Burgunder v. United Specialty Ins. Co.,* No. CV 17-1295, 2018 WL 2184479, at *5 (W.D. Pa. May 11, 2018) (applying Pennsylvania law). Thus, even under Stella's broader reading of the clause, summary judgment would remain inappropriate because the record presents factual disputes concerning the roof's condition and maintenance and, relatedly, whether the claimed damage was foreseeable from any inadequate maintenance.

Local Rule 56.1 is designed to "provide a mechanism by which courts can expeditiously determine what, if any, material facts are in dispute." *Lewis v. Delp Fam. Powder Coatings, Inc.,* No. CIV.A 08-1365, 2010 WL 3672240, at *4 (W.D. Pa. Sept. 15, 2010); *see also Bouriez v. Carnegie Mellon Univ.,* No. Civ.A. 02–2104, 2005 WL 2106582, *3 (W.D. Pa. Aug. 26, 2005) ("The purpose of Local Rule 56.1 is to aid the court in deciding a motion for summary judgment by identifying material facts and supporting documentation"). "A district court acts well within its discretion in insisting on compliance" with its requirements. *Ziller v. Emerald Art Glass,* Civ. A.No. 05–82, 2006 WL 2853976, *1 (W.D. Pa. Oct. 4, 2006) (citations omitted). And courts have recognized that a party's failure to file the required concise statement can be "ground[s] for dismissal of a motion for summary judgement." *Morrow v. Marucci,* No. 1:16-CV-00197, 2018 WL 11307124, at *1 (W.D. Pa. Dec. 13, 2018).

That said, the Local Rules should not be applied in a mechanical fashion divorced from their purpose. Where the Court can readily identify the relevant factual record and determine what, if any, material facts are disputed, denying a motion on purely technical grounds is not required.[22] And "this Court has broad, far-

---

[22] *See, e.g., Javornick v. United Parcel Serv., Inc.,* No. CIV.A. 07-0195, 2008 WL 4462280, at *2 (W.D. Pa. Sept. 29, 2008) (refusing to strike a statement of facts for noncompliance with Local Rule 56.1 where, upon review of the party's filings, "the court can nevertheless determine whether there are any material facts in dispute for purposes of deciding the pending motion for summary judgment"); *Lula v. Network*

reaching discretion in framing an approach to curing this type of failure to fully comply with the Local Rules." *Morrow*, 2018 WL 11307124, at *1.

Here, Auto-Owners filed its motion on October 2, 2025, consistent with the Court's scheduling order (ECF No. 44 ¶ 1). The motion included a detailed "Facts" section. ECF No. 49 at ¶¶ 7–58. Auto-owners acknowledges that it should have filed those factual assertions as a separate concise statement under Local Rule 56(B)(1). ECF No. 57 at ¶ 3. Further, it has apologized to the Court and opposing counsel for failing to do so. *Id.* One week after Stella raised the issue in response, Auto-Owners filed a separate concise statement that is identical to the factual recitation already included in its motion (ECF No. 55). Under these circumstances, I find no reason to strike the filing or deny Auto-Owners' motion on procedural grounds. Moreover, in light of Stella's own motion for summary judgement and supporting statement of facts, along with Auto-Owner's response, I am well positioned to discern what material facts are in dispute.

Finally, Stella argues that Auto-Owner's belated Statement of Facts is prejudicial because Stella has already responded in opposition and because "every day that goes by without the roof being fixed threatens the structure's interior." ECF

---

*Appliance, Inc.,* No. 2:03CV1066, 2006 WL 1371132, at *9 (W.D. Pa. May 17, 2006) ("Though the Court agrees with the arguments set forth in [defendants] Motion to Strike . . . it will not impose the severe sanction requested," of striking plaintiff's response to the statement of undisputed material facts in it its entirety), *aff'd,* 245 F. App'x 149 (3d Cir. 2007).

No. 56 at ¶¶ 11–12. But Stella had notice of Auto-Owners' asserted facts when it filed its response, and Auto-Owner's later statement does not introduce new factual material. And striking Auto-Owner's statement would serve only to generate additional delay without advancing the purpose of Local Rule 56.1, given that the proper resolution would likely be to dismiss without prejudice and permit Auto-Owners to refile their motion with a compliant statement of facts, which they have already done.[23] Accordingly, Stella's motion to strike is denied, and I turn to the merits of Auto-Owners' Motion for Partial Summary Judgement.

### 2. Bad-Faith

Auto-Owners argues that Stella's bad-faith claim fails as a matter of law because the record does not support a finding, by clear and convincing evidence, that Auto-Owners lacked a reasonable basis to deny coverage, or that it knowingly or recklessly disregarded the absence of such a basis. Stella responds that a reasonable

---

[23] *See, e.g., McCree v. Allegheny Cnty.,* No. CIV A 05-1591, 2006 WL 3717384, at *2 (W.D. Pa. Dec. 14, 2006) ("[T]he failure to file a separate statement of facts does not merit the extreme sanction of striking [a] Motion for Summary Judgment."); *Porter v. Hogue,* No. CIV.A. 12-101, 2013 WL 1673135, at *2 (W.D. Pa. Apr. 17, 2013) ("Because of the substantial nonconformity of Defendants' Motion for Summary Judgment with the Local Rules of this Court, the Court finds the most efficient resolution is to strike the entire Motion for Summary Judgment from the record and require Defendants to file a new, conforming Motion along with a Concise Statement of Material Facts[.]"); *Morrow,* 2018 WL 11307124, at *2 (dismissing Defendants' Motion for Summary Judgment for noncompliance with Rule 56, but doing so without prejudice and providing Defendants 30 days to refile their motion).

jury could find bad faith based on the manner in which Auto-Owners investigated and adjusted the claim, including its continued reliance on exclusions despite evidence of wind involvement. I address the parties' arguments under Pennsylvania's bad faith statute, 42 Pa. Cons. Stat. § 8371.

To succeed on a claim of bad faith, an insured must prove by clear and convincing evidence: "(1) that the insurer did not have a reasonable basis for denying benefits under the policy and (2) that the insurer knew or recklessly disregarded its lack of a reasonable basis in denying the claim." *Rancosky v. Washington Nat'l Ins. Co.*, 170 A.3d 364, 377 (Pa. 2017). The "clear and convincing" standard is demanding. It requires evidence "so clear, direct, weighty and convincing as to enable a clear conviction, without hesitation," that the insurer acted in bad faith. *J.C. Penney Life Ins. Co. v. Pilosi*, 393 F.3d 356, 367 (3d Cir. 2004) (internal quotation marks and citation omitted). As a result, a "plaintiff's burden in opposing a summary judgment motion is commensurately high." *Id.* (internal quotation marks and citation omitted).

The first prong's "reasonable basis" inquiry is objective. *Rancosky*, 170 A.3d at 374. It asks "whether a reasonable insurer would have denied payment of the claim under the facts and circumstances presented." *Id.* Accordingly, "if a reasonable basis exists for an insurer's decision, even if the insurer did not rely on that reason, there

cannot as a matter of law be bad faith." *Hamm,* 908 F. Supp. 2d at 669 (internal quotation marks and citation omitted).

Here, Stella has not adduced sufficient evidence from which a jury could reasonably conclude, by clear and convincing evidence, that Auto-Owners lacked a reasonable basis to deny its claim.[24] As explained above, the Policy's ensuing-loss provisions do not reinstate coverage on Stella's susceptibility theory. And under the EPC framework, coverage turns on a fact-intensive determination of whether wind, as opposed to wear and tear or inadequate maintenance, was the dominant and efficient cause of the roof damage.

In denying Stella's claim, Auto-Owners' relied on detailed investigative materials and expert assessments that attributed the roof damage primarily to decay and wear and tear. In particular, the reports on which Auto-Owner relied, complete with photographs, described the shingles on the roof as "over 25 years old and in very poor condition," ECF No. 49-4 (Turner Report) and exhibiting significant "long-term deterioration," including "flaking," "curling," and "clawing," Appx316 (Rimkus Report). Based on those observed conditions, the reports concluded that the asphalt shingles had been lost over time—"removed by various moderate wind

---

[24] Because Stella has not met its burden on the first prong, there is no "need [to] address the second prong, as both are required for a successful bad faith claim." *Hamm v. Allstate Prop. & Cas. Ins. Co.,* 908 F. Supp. 2d 656, 672 (W.D. Pa. 2012).

events" acting on an already compromised roof—and that the roof was "not damaged by a single wind event." Appx309.

Those assessments supplied an objectively reasonable basis for Auto-Owners to conclude that wear and tear and/or inadequate maintenance, rather than a covered windstorm, was the dominant and efficient cause of the loss, and that the exclusions therefore applied.[25] Of course, Stella may ultimately persuade a factfinder that wind was the dominant cause, and that the loss is covered. Then again, Stella may fail in such efforts. But the mere possibility that an insured may prevail at trial hardly equates to bad faith. The question under § 8371 is whether the denial lacked a reasonable basis. *See Pilosi,* 393 F.3d at 367 ("A reasonable basis is all that is required to defeat a claim of bad faith."). Based on the foregoing, I answer that question in the negative.

Accordingly, the following order is entered:

---

[25] *See Covenant Realty v. Westminster Am. Ins. Co.,* No. 2:20-CV-00301-KSM, 2021 WL 4963519, at *5 (E.D. Pa. Oct. 26, 2021) (holding that an adjuster's and structural engineer's investigative reports—supported by photographs indicating the roof "was in a state of disrepair"—provided the insurer a reasonable basis to deny roof-damage coverage); *Gethsemane FBH Church of God v. Nationwide Ins. Co., No.* CV 19-03677, 2020 WL 1694544, at *4 (E.D. Pa. Apr. 7, 2020) ("Insurance companies act reasonably, and do not exercise bad faith, when they deny claims based upon engineering experts' reports."); *Palmisano v. State Farm Fire & Cas. Co.,* Civil Action No. 12-886, 2012 WL 3595276, at *15 (W.D. Pa. Aug. 20, 2012) (holding that the insurer "had a reasonable basis to rely on the conclusions of the structural engineer's report as to the cause of the damage to Plaintiffs' home and deny coverage under the exclusions cited in its letter").

## **ORDER**

AND NOW, this 28th of January, 2026, for the reasons set forth herein, IT IS ORDERED that Plaintiff's Motion for Partial Summary Judgment (ECF No. 45) is DENIED, Plaintiff's Motion to Strike (ECF No. 56) is DENIED, and Defendant's Motion for Partial Summary Judgement (ECF No. 49) is GRANTED and Count II of Plaintiff's Complaint is dismissed with prejudice.

/s/D. Brooks Smith

D. Brooks Smith
United States Circuit Judge
Sitting by Designation